FILED
2008 Jul-24 PM 01:59
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION**

| | | |
|---|---|---|
| **MARY L. MALONE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.: 5:07-CV-2351-VEH** |
| | ) | |
| **MICHAEL J. ASTRUE, Commissioner, Social Security Administration,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION**

Plaintiff Mary L. Malone (hereinafter "Malone") brings this action pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g). She seeks review of a final adverse decision of the Commissioner of the Social Security Administration (hereinafter "Commissioner" or "Secretary"), who denied her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Malone timely pursued and exhausted her administrative remedies available before the Commissioner. The case is ripe for review, pursuant to 42 U.S.C. § 405(g), § 205(g) of the Social Security Act.[1] As discussed below, the court concludes that the

[1] 42 U.S.C. § 1383(c)(3) renders the judicial review provisions of 42 U.S.C. § 405(g) fully applicable to claims for SSI.

decision of the Commissioner is due to be reversed and the case remanded.

**Factual and Procedural History**

Malone is a female claimant and was 40-years-old at the time of her hearing on March 14, 2007. (Tr. 321). She has a high school education and ceased attending college courses after one year. *Id.* Her past relevant experience includes working as a cook. (Tr. 322).

Malone claims she has been unable to work since September 2, 2005, the alleged onset date of her symptoms, when she injured her back at work. (Tr. 37). She states she is disabled because of degenerative disc disease in her back, right knee problems, and depression and anxiety. (Tr. 29). She maintains she can only sit for "three to five minutes" at a time and can only stand "maybe five to ten minutes" at a time, due to her back pain. (Tr. 323-24). She explains she needs a cane to walk and her daughter's assistance in many daily activities. (Tr. 324, 329-30). Malone further states that she suffers from carpal tunnel and has trouble "opening things." (Tr. 326). She applied for disability benefits on September 29, 2005.

Malone's application for benefits was denied by the Commissioner on December 12, 2005. She subsequently requested a hearing before the Administrative Law Judge (hereinafter referred to as "ALJ") on January 28, 2006.

On March 14, 2007, a hearing was conducted before ALJ Patrick R. Digby.

(Tr. 13). The ALJ denied Malone's claim for benefits in his opinion, dated April 19, 2007. (Tr. 21). The Appeals Council denied Malone's request for review on November 6, 2007. (Tr. 5). Malone filed a Complaint on December 28, 2007, in which she asked this court to review the ALJ's decision pursuant to 42 U.S.C. § 405(g). (Doc. 1).

Malone maintains that the ALJ's decision is not supported by substantial evidence for the following reasons: (1) the ALJ improperly applied the pain standard when determining negative credibility in regard to Malone's subjective pain testimony; (2) the record does not contain a medical opinion from a treating physician regarding Malone's functional abilities; (3) the ALJ did not expressly articulate his reasons for determining that Malone can perform certain occupational maneuvers with "only one lower extremity"; and (4) the ALJ did not expressly articulate his reasons for determining that Malone had "acquired skills" from her past work experience that may transfer to a sedentary work job. (Pl. Br. at 2).

## **<u>Standard of Review</u>**[2]

The function of this court is to determine whether the decision of the ALJ is

[2]In general, the legal standards applied are the same regardless of whether a claimant seeks DIB or SSI. However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations of statutes or regulations found in quoted court decisions.

supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales,* 402 U.S. 389, 390, 401 (1971); *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988); *Graham v. Bowen*, 790 F.2d 1572, 1575 (11th Cir. 1983); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth*, 703 F.2d at 1239. The court will determine that the ALJ's opinion is supported by substantial evidence if it finds "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* Substantial evidence is "more than a scintilla, but less than a preponderance." *Id.*

**Statutory and Regulatory Framework**

_____To qualify for disability benefits and establish her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[3] The Regulations define "disabled" as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than

[3]The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499, revised as of March 27, 2008.

twelve (12) months." 20 C.F.R. § 404.1505(a). To establish an entitlement to disability benefits, a claimant must provide evidence about a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). The Commissioner must determine in sequence:

(1)    whether the claimant is currently employed;
(2)    whether the claimant has a severe impairment;
(3)    whether the claimant's impairment meets or equals an impairment listed by the Secretary;
(4)    whether the claimant can perform her past work; and
(5)    whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to former applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel,* 189 F.3d 561 (7th Cir. 1999); *accord, McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once the claimant has satisfied steps one and two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the Secretary to show that the claimant can perform some other job." *Pope*, 998 F.2d at 477; *Foote v.*

*Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner must further show that such work exists in the national economy in significant numbers. *Foote*, 67 F.3d at 1559.

**Findings of the Administrative Law Judge**

______Using the five-step process above in determination of the disability of Malone, the ALJ determined Malone is not disabled and therefore not entitled to the requested disability benefits. Below are the ALJ's findings, based on the five-step disability standard:

**(1) Employment**

The ALJ found that Malone has not engaged in substantial gainful activity at any time relevant to this decision and is not employed. (Tr. 15).

**(2) Severe Impairment(s)**

The ALJ found that Malone does have severe impairments based on the Regulations 20 C.F.R. §§ 404.1520(c) and 416.920(c). *Id.* More specifically, those severe conditions are (a) degenerative disc disease and (b) synovial thickening of the right knee. (Tr. 15-16).

**(3) Severe Impairment(s) within Regulations**

The ALJ found that Malone does not have an impairment or combination of impairments that meets or medically equals the listed impairments in 20 C.F.R. § 404,

Subpt. P, App.1.  (Tr. 17).  While Malone's impairments are "severe" within the meaning of the Regulations, they are not "severe" enough to meet or medically equal one of the impairments in Appendix One.  *Id.*  The ALJ noted that, because a claimant's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by objective medical evidence alone, he may consider other evidence under 20 C.F.R. §§ 404.1529(c) and 416.929(c), in addition to the medical evidence,  when determining the severity of the claimant's impairment.  (Tr. 17-18).  This evidence is discussed more in-depth below, and based upon such, the ALJ found that Malone's impairments were not "severe" enough to meet or medically meet one of the impairments listed in Appendix One.  (Tr. 18).

**(4)    Past Relevant Work**

The ALJ found that Malone is unable to perform any past relevant work under 20 C.F.R. §§ 404.1565 and 416.965.  (Tr. 19).  Malone's past relevant work was as a cook, which, according to the vocational expert, is classified as medium in exertional level and skill.  The ALJ determined that Malone lacks the residual functional capacity ("RFC") to perform the requirements of her past relevant work.

**(5)    Capability of Performing Work in the National Economy**

The ALJ found that Malone is capable of performing sedentary work in the

national economy.[4] (Tr. 17-20). This finding is based on the ALJ's conclusion, which is determined by the medical evidence and other evidence under 20 C.F.R. §§ 404.1565 and 416.965, that Malone's RFC allows her to perform a reduced range of sedentary work with a sit/stand option and subject to various limitations. (Tr. 17).

The ALJ also relied upon opinion evidence in forming this RFC conclusion. *Id.* Furthermore, the ALJ used the three-part pain standard in forming this RFC conclusion and also evaluated the intensity, persistence and limiting effects of the Malone's symptoms to determine the extent to which they limit the claimant's ability to do basic work activities. *Id.* In doing so, the ALJ made an adverse finding on the credibility of her statements in regard to this intensity, persistence, or functionally limiting effects of pain or other symptoms not substantiated by objective medical evidence. *Id.*

**Findings and Holdings of the Court**

_____The court has carefully reviewed the record and finds that this case should be remanded. Under the instant circumstances, the evidence in the record is not substantial to support the ALJ's RFC conclusion that Malone is not disabled and can

[4]"Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required and other sedentary criteria are met." 20 C.F.R. § 416.967(a).

perform reduced sedentary work because: (a) the ALJ's negative credibility finding in regard to Malone's subjective pain testimony is not supported by substantial evidence; and (b) the record contains no medical source statement(s)[5] ("MSS") from Malone's treating physician referencing her functional abilities or limitations.

Malone bears the ultimate burden of proving her disability. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). She must prove in step one that she is not working, *id.* which Malone established, and the ALJ confirmed. (Tr. 15). She must prove in step two that she has severe medical impairment(s), *Bowen*, 482 U.S. at 146 n.5, which her medical records establish, and the ALJ confirmed. (Tr. 15-16). At step three, the inquiry is whether Malone's impairments are listed in Appendix 1 of the Regulations. *McDaniel*, 800 F.2d at 1030 (citing 20 C.F.R. § 404-P, App. 1). The ALJ determined that Malone's impairments were not of the type listed in the Appendix. (Tr. 16).

If, as here, a claimant does not suffer from a listed impairment, the process moves to step four, where the "inquiry is whether [a claimant], despite her severe impairment, has the residual functional capacity to perform her past work."

[5]Medical source statements are "medical opinions submitted by acceptable medical sources, including treating sources and consultative examiners, about what an individual can still do despite a severe impairment(s), in particular about an individual's physical and mental abilities to perform work-related activities on a sustained basis. Medical source statements are to be based on the medical sources' records and examination of the individual; *i.e.*, their personal knowledge of the individual. Therefore, because there will frequently be medical and other evidence in the case record that will not be known to a particular medical source, a medical source statement may provide an incomplete picture of the individual's abilities." SSR 96-5p.

*McDaniel*, 800 F.2d at 1030; *see* 20 C.F.R. § 416.965. The ALJ in the instant case concluded that Malone was not able to perform her past work. (Tr. 19). Finally, upon finding that Malone could not perform her past work, at step five, the burden shifted to the Commissioner to prove there is other work in the national economy she can perform. *McDaniel*, 800 F.2d at 1030 (citing 20 C.F.R. § 404-P, App. 1).

**I. THE ADMINISTRATIVE LAW JUDGE'S NEGATIVE CREDIBILITY DECISION IN REGARD TO MALONE'S SUBJECTIVE PAIN TESTIMONY IS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE.**

Malone argues she meets the Eleventh Circuit's pain standard, and the ALJ's contrary decision is not supported by substantial evidence. The court agrees. More specifically, the ALJ's decision that she does not meet the pain standard is based on an inadequate negative credibility finding on Malone's subjective pain testimony. (Tr. 18).

The pain standard "applies when a disability claimant attempts to establish a disability through [her] own testimony of pain or other subjective symptoms." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). This standard requires evidence of an underlying medical condition and (1) objective medical evidence confirming the severity of the alleged pain or (2) that the objectively determined medical condition is of such a severity that it can reasonably be expected to cause the alleged pain. *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986). A claimant's statements

about pain or other symptoms do not alone establish disability. *See* 20 C.F.R. §§ 404.1529(a), 416.929(a). Instead, medical signs and laboratory findings must depict medical impairments that could reasonably be expected to produce the claimant's alleged symptoms. *See id.*; *see also Edwards v. Sullivan*, 937 F.2d 580, 584 (11th Cir. 1991) (citing *Landry v. Heckler*, 782 F.2d 1551 (11th Cir. 1986)). Even if a claimant meets the pain standard, the ALJ may then evaluate the intensity, persistence, and limiting effects of the alleged symptoms, such as pain. *See* 20 C.F.R. § 404.1529(c)(1).

Applying this standard to the present case, the ALJ correctly finds that medical signs and laboratory findings depict medical impairments that could reasonably be expected to produce the alleged symptoms. (Tr. 18). However, the ALJ determines "the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely credible." *Id.* As explained *infra*, the court finds that the ALJ's determination was not supported by substantial evidence and the ALJ's reasons for discrediting of the claimant's statement, while explicit, were not adequate as a matter of law.

The ALJ may reject a plaintiff's complaints of pain if he finds them not credible. *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992). However, if the ALJ discredits a claimant's testimony regarding the severity of her symptoms, that

determination must be supported by substantial evidence, and the ALJ must "articulate explicit and adequate reasons" for such. *Id.*

Furthermore, the ALJ may not reject the claimant's statements as to the intensity and persistence "solely because the available objective medical evidence does not substantiate [a claimant's] statements." 20 C.F.R. § 404.1529(c)(2); *see also* SSR 96-7p.[6] Instead, the ALJ is bound to consider other evidence, in addition to the objective medical evidence, because "symptoms sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone." 20 C.F.R. § 404.1529(c)(3). This "other evidence" includes statements made by the claimant in testimony during administrative hearings concerning the claimant's restrictions, daily activities, frequency and intensity of symptoms, any precipitating and aggravating factors, medication taken and any resulting side effects, and any other measures taken to alleviate the symptoms. *See* 20 C.F.R. §§ 404.1529(c)(3) and 416.912(b)(3). Using these "other evidence" factors, the ALJ must show substantial evidence supporting his attempt to discredit the claimant's pain testimony. *Id.*

**<u>Malone's Subjective Pain Testimony</u>**

---

[6]Although they lack the force of regulations, Social Security Rulings are "binding on all components of the Social Security Administration." 20 C.F.R. § 402.35(b)(1); *see also McCloud v. Barnhart*, 166 Fed. Appx. 410 (11th Cir. 2006), 2006 WL 177576 (citing SSR 96-6p as authoritative, for example).

Malone gave detailed testimony about her pain and related limitations.  For example, she testified she can only sit for "three to five minutes" at a time and can only stand "maybe five to ten minutes" at a time, due to her back pain.  (Tr. 323-24).  She reported she is unable to sit for longer than a "few minutes" before she experiences a "pulling type thing in [her] back."  (Tr. 337).  She explained she has trouble walking and can only walk "about ten feet" on her own before she loses her breath or must use a cane for assistance.  (Tr. 324).  She testified she "can't just walk without [her cane]."  *Id.*

Malone further testified she experiences numbness in her shoulders and knee and "sharp pains" in her back.  (Tr. 327-28).  She rated her back pain as a "seven" on a ten-point scale and said this pain is constant, even when she takes pain medication.  *Id.*  She testified her back pains and knee pains are related, as she "stagger[s]."  (Tr. 328).  She further testified she has fallen "lots of times."  *Id.*

Malone reported difficulty when attempting to "twist and turn, [and] bend," and she cited the example of not being able to turn herself over while sleeping at night without the use of her cane.  (Tr. 328-29).  She also cited the example of needing her daughter's help when attempting to get out of bed, to dress, and to bathe.  (Tr. 329-30).  She further testified she is unable to vacuum, clean, do laundry, do yard work, grocery shop because she will "just give out."  (Tr. 339).  Malone testified she

experiences muscle spasms and cramping. (Tr. 330-31).

_____Malone testified she has pains in her right knee, caused by a torn anterior cruciate ligament and subsequent surgeries. (Tr. 333). She reported swelling in the knee and said she "can't bend at all" on her "stiff" limb. (Tr. 334). She rated her knee pain as an "eight" on a ten-point scale and said this pain is constant. *Id.* She further testified physical activity such as standing and walking aggravates her knee pain. (Tr. 335).

As noted above, Malone testified her back and knee pains are related. (Tr. 328). She indicated that "reaching over [her] head" is difficult, she "can't lift anything," and she has problems bending. (Tr. 335) She reported she can't get on her hands and knees. (Tr. 335-36). Malone stated she is able to lift "maybe five pounds" without aggravating her condition. (Tr. 338).

Malone testified she suffers from carpal tunnel. (Tr. 326). She reported she has trouble "opening things" and is unable to cook.

Malone stated she suffers from depression or anxiety. (Tr. 325). She further reported she has an appetite problem that is linked to this depression or anxiety. *Id.* She testified this appetite problem and non-activity has caused her to gain "40 to 50 pounds" because when she is depressed, she "just eat[s] a lot." (Tr. 340). She further

reported she does not sleep properly because of her depression or anxiety, which causes her to worry.  (Tr. 340-41).  Malone also indicated she experiences daily "crying spells" due to depression or anxiety.  (Tr. 342).

**ALJ's Efforts to Discredit Malone**

The ALJ attempts to discredit Malone's subjective pain testimony and related limitations based upon several reasons.  While the ALJ expressly articulates each basis upon which he relies, as explained below, the court believes these reasons are not adequate to discredit Malone's subjective complaints and do not provide substantial evidence to deny her disability claim.

**First  Reason: Discontinuance of Visits**

The first  reason the ALJ attempts to discredit Malone's subjective pain testimony is her discontinuance of visits to the physical therapist.  (Tr. 18).  She testified that her doctor instructed her to discontinue the physical therapy because it was increasing her pain.  *Id.*; (Tr. 346).  However, the ALJ notes that there is no record in the objective medical evidence to substantiate her testimony.  (Tr. 18).

The ALJ may consider conflicts between a claimant's statements and the rest of the evidence in the record when evaluating the extent to which alleged symptoms are of a disabling severity.  *See* 20 C.F.R. § 404.1529(c)(4).  However, the rest of the

evidence in the record does not conflict with Malone's testimony. It is simply non-existent.

The court "must scrutinize the record in its entirety to determine the reasonableness of the Secretary's actual findings." *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987). Examining the entire record, the physical therapy reports indicate that Malone's body was "in shock from the [exercises]." (Tr. 163). This existing evidence is consistent with her testimony that the physical therapy was "aggravating her back more." (Tr. 346). This evidence also lends credence to her testimony that she was instructed by her doctor not to return to physical therapy. Therefore, the ALJ's decision to discredit Malone's subjective testimony on this ground is not supported by substantial evidence.

**Second Reason: Driving and Drinking while Driving**

The second reason the ALJ attempts to discredit Malone's subjective pain testimony is that he believes she "made inconsistent statements regarding matters relevant to the issue of disability" when she "testified she didn't drive because she had no license." (Tr. 18). The ALJ notes, "it was determined that her license was suspended for unpaid speeding tickets and one DUI." *Id.* However, Malone answered the ALJ's questions regarding this issue. (Tr. 323). She did not lie when

the ALJ asked her why she did not drive. *Id.*

The ALJ also points out that "on a questionnaire completed June 2, 2005, [Malone] indicated she did not drink." (Tr. 18). The said "questionnaire" was a patient information form Malone filled out when visiting Dr. Charles Hillis. (Tr. 135). Her answer on this form provides no logical conclusion that she lied on this date. The record contains no evidence of the timing of her DUI, and she may very well have been abstinent from alcohol when she completed the form. Therefore, her answers regarding driving and drinking while driving, both at the hearing and on the form, do not serve as substantial evidence to discredit her.

**<u>Third Reason: Appetite Problem</u>**

The third reason the ALJ uses to discredit Malone's subjective pain testimony relates to her statements about her "appetite problem," which she attributed to anxiety and depression. (Tr. 19). "Although she complained of an appetite problem because of anxiety and depression," the ALJ remarks, "she has gained 40 to 50 pounds." *Id.* However, Malone's testimony regarding her "appetite problem" is consistent with her weight gain. (Tr. 340). More specifically, she testified, "when I'm depressed I just eat a lot." *Id.* Therefore, her depression contributed to her weight gain. *Id.* Accordingly, the ALJ's decision to discredit her subjective complaints for this reason

is not supported by substantial evidence.

**Fourth Reason: Objective Medical Evidence**

The fourth reason the ALJ relies upon to discredit Malone's subjective pain testimony is that many of her complaints are not substantiated by the objective medical evidence. (Tr. 18-19). In doing so, the ALJ relies heavily upon the medical records of Dr. Sparks, a consulting physician, who conducted a musculoskeletal examination of Malone in December of 2005.[7] (Tr. 16). In his disability opinion, the ALJ states concerning Malone's testimony at the administrative hearing held on March 14, 2007:

> The claimant said she can't work because she can stand only three to four minutes, she can only walk about ten feet and must walk with a cane. However when the claimant was examined by Dr. Sparks in December 2005, he noted she was not using a cane or crutch and moved with normal ambulation and gait.

(Tr. 19).

Further, the ALJ indicates that the evidence from Dr. Sparks's examination also shows "knee jerks and ankle jerks were symmetric and normal amplitude," and Malone "could walk on her tiptoes and on her heels without apparent weakness." (Tr.

[7]The court notes that while the ALJ never states what weight he gives to Dr. Sparks's opinions about Malone, it is apparent that Dr. Sparks's statements are critical to the ALJ's disability determination. *See also* (Doc. 10 at 14 n.4 ("[T]he ALJ RFC finding is supported by Dr. Sparks' [sic] opinion.")).

16).  When she performed leg raises and hip rotation, they "did not aggravate her pain."  *Id.*

In regard to her alleged carpal tunnel, the ALJ notes, relying again upon Dr. Sparks's examination, that Malone "had no difficulty with either hand, and she was perfectly capable of making a fist, buttoning buttons, tying shoelaces, and picking up small objects."  *Id.*  However, Dr. Sparks's report lacks any conclusions that Malone does not suffer from carpal tunnel and provides only objective evidence to discredit her subjective complaints of pain relating to this particular claimed condition.

Finally, the ALJ references that, "[i]n Dr. Sparks's opinion, the claimant would continue to have pain in her back with strenuous musculoskeletal activities. However, he felt she was physically able to do a more sedentary job."  *Id.*

Subsequent to Dr. Sparks's examination of Malone on December 6, 2005, she returned to the emergency room for swelling to her right knee on June 29, 2006.  (Tr. 170-77).  This hospital visit occurred before Malone gave testimony at the administrative hearing on March 14, 2007.  The notes from that visit state, "crutches given."  (Tr. 172).

Additionally, Malone slipped and fell and visited Dr. Matthews on November 27, 2006.  (Tr. 302).  Dr. Matthews's report from that examination shows a reference

to crutches.  *Id.*  Also in that report, Dr. Matthews notes that Malone was experiencing "severe pain" and a "pulling sensation from middle back to knee." (Tr. 302).  As explained above, the ALJ questions Malone's credibility because during the hearing she testified that she needed artificial support to move around.  (Tr. 19).  Dr. Matthews's reports, written after Dr. Sparks's examination, are consistent with Malone's claim of needing to use a cane and therefore that particular basis relied upon by the ALJ does not adequately discredit her credibility.  (Tr. 172); (Tr. 302).

The ALJ notes that Malone complains of back problems, but "no doctor has ever performed surgery" on her back, and one MRI "showed only mild curvature to the spine" and showed "very mild scoliosis." (Tr. 18).  Also, the ALJ states, this MRI showed "no compressed vertebrae and no sublaxations."  *Id.*  However, once again the ALJ uses solely a lack of objective medical evidence to discredit Malone.

Malone described her daily activities as including help from her daughter to bathe and dress.  *Id.*  The ALJ states that while Malone testified that "doctors had limited her bending and twisting, there is no record of such limitation" in the objective medical evidence.  *Id.*  However, at the same time, the court points out that no functional assessment exists in the record from Malone's treating physician. Furthermore, nothing in the record could serve as substantial evidence to discredit Malone's claim that she needs help from her daughter to perform daily activities.

The ALJ notes that Malone testified she suffers from depression and anxiety and has constant crying spells. (Tr. 19). He discredits her on these claims because "she takes no medications for anxiety and depression." *Id.* If the record lacks evidence substantiating a claimant's testimony, the ALJ may consider this evidence along with several factors, including the "dosage, effectiveness, and side effects of any medication." *Colbert v. Astrue*, 2008 WL 2329419 (M.D. Fla. June 4, 2008). However, that Malone claims to be depressed but has not been diagnosed as such does not provide substantial evidence to discredit all her subjective complaints. She does not contradict that she has not been prescribed medication for this impairment. In any event, the existence, or non-existence, of this one impairment is not fatal to Malone's disability claim.

Furthermore, the ALJ attempts to discredit Malone's testimony that she visited the "emergency clinic on June 29, 2006, and was told to elevate her leg with ice." (Tr. 18). The ALJ incorrectly remarks, "there is no record of such since that date." *Id.* In fact, the emergency clinic records from that date clearly contain such instructions. (Tr. 174). The ALJ also notes that the x-ray of Malone's knee on that date "revealed no acute bony disease." (Tr. 18). The ALJ again points to a lack of objective medical evidence in his attempt to discredit Malone's reports of pain.

As stated above, the ALJ "cannot reject the claimant's statements as to the

intensity and persistence solely because they are not substantiated by objective medical evidence." 20 C.F.R. § 404.1529(c)(2). Given the inadequacy of the other reasons for discrediting Malone, as determined above by the court, the ALJ was improper in solely applying objective medical evidence as grounds to discredit Malone's subjective statements.

Also, in an apparent attempt to further discredit the testimony of Malone, although the purpose of the statement is not explained, the Commissioner notes in his brief, in regard to Malone's last visit with Dr. Hillis, another treating physician, "[Malone] left without giving a urine sample, and Dr. Hillis dismissed her as a patient." (Doc. 10 at 6-7). The ALJ mentions this in his description of Malone's impairments. (Tr. 16). However, he does not rely upon it in his negative credibility analysis. (Tr. 17-19). Even if he did, the extremely limited discussion of this particular situation in the record means that it cannot serve as substantial evidence to discredit Malone. Therefore, given the context of the entire record, the ALJ has not adequately discredited Malone's subjective complaints about pain and her related overall self-described limitations.

## II. ALTERNATIVELY, THE COMBINATION OF (A) THE LACK OF A MSS BY MALONE'S TREATING PHYSICIAN AND (B) THE ALJ'S QUESTIONABLE, IF NOT IMPROPER, NEGATIVE CREDIBILITY FINDING, CALLS FOR A REMAND.

While Malone has the burden of proving her disability, the ALJ has a basic obligation to develop a full and fair record. *Cowart v. Schweiker*, 662 F.2d 731, 732 (11th Cir. 1981) (citing *Thorne v. Califano*, 607 F.2d 218, 219 (8th Cir. 1979)). When the ALJ has failed to develop a full and fair record, the court "has required the Secretary to reopen the case 'until the evidence is sufficiently clear to make a fair determination as to whether the claimant is disabled or not.'" *Thorne*, 607 F.2d at 220 (quoting *Landess v. Weinberger*, 490 F.2d 1187, 1189 (8th Cir. 1974)).

In *Thorne*, as in the instant case, there was no medical opinion provided by a treating physician as to whether the plaintiff's condition made her unemployable. *Id.* The only medical opinion regarding Malone's functional capabilities was provided by the consultative physician, Dr. Sparks, who is not a treating physician and only saw Malone one time.[8] (Tr. 136-37). "Neither counsel nor the ALJ made any effort" to ascertain an opinion regarding Malone's functional capabilities or limitations from a treating physician. *Thorne*, 607 F.2d at 220.

---

[8]This opinion from Dr. Sparks was later incorporated into a state agency functional assessment. (Tr. 136-37, 138-45). The overall assessment was completed by a non-examining DDS specialist. This assessment was based in part upon the results of Dr. Sparks's musculoskeletal examination of Malone.

In its brief, the Commissioner contends that because the ALJ's RFC finding is supported by Dr. Sparks's opinion, it is adequate.  (Doc. 10 at 14 n.4).  Dr. Sparks's MSS is "based on [his] records and examination of the individual." SSR 96-5p. However, "because there will frequently be medical and other evidence in the case record that will not be known to a particular medical source, a medical source statement may provide an <u>incomplete picture</u> of the individual's abilities."  *Id.* (emphasis added).

In his MSS, which was limited to the results of his musculoskeletal examination of Malone, Dr. Sparks did not address Malone's subjective pain complaints.  (Tr. 136-37).  As such, Dr. Sparks is unclear in his MSS as to what, if any, credence he gave to Malone's complaints of disabling pain.  *Id.*  As noted in footnote 8, *supra*, he did not fill out a complete physical residual capacities evaluation but rather submitted his limited MSS to the state agency representative, who then filled out the full capacities evaluation.  *Id.*; (Tr. 138-45).  Dr. Sparks's conclusion that Malone could perform sedentary work and the ALJ's reliance upon such are problematic because the doctor does not explain what, if any weight, he gave to Malone's subjective pain complaints.  This substantially weakens any reliance on Dr. Sparks's conclusion regarding Malone's ability to do "sedentary work."  The court is not making a judgment as to whether the ALJ should have discounted Dr.

Sparks's MSS, as that is within his discretion. *See* SSR 96-5p. However, the ALJ's decision to rely upon it, given Malone's detailed subjective complaints of pain and in the absence of any MSS from Malone's treating physician regarding his opinion about her work-related functional limitations, does not provide substantial evidence to support the ALJ's RFC finding.

This court has confirmed the Eleventh Circuit's view that "the absence of a physician's opinion regarding a plaintiff's functional limitations does not morph into an opinion that the plaintiff can work." *Clemmons v. Astrue*, No. 3:06-CV-1058-VEH, (Doc. 22 at 11) (N.D. Ala. June 11, 2007) (initial memorandum opinion on remand) (discussing *Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988)). "Such silence is equally susceptible to either inference, therefore, no inference should be taken." *Clemmons*, (Doc. 22 at 11) (citing *Lamb*, 847 F.2d at 703). This court has similarly noted, "where the treating physician has not discharged the patient from treatment and the physician has not made, and was not asked to make, a determination regarding plaintiff's functional capabilities, there is no substantial evidence to support an ALJ's functional capacity finding." *Clemmons*, (Doc. 22 at 11) (citing *Lauer v. Apfel*, 245 F.3d 700, 705 (8th Cir. 2001)).

Neither the Eleventh Circuit nor this court has adopted a bright line test to determine whether the lack of a treating physician's MSS as to a claimant's functional

ability calls for a remand.  In some cases, a treating physician's MSS is necessary. *See, e.g., Coleman v. Barnhart*, 264 F. Supp. 2d 1007, 1010 (S.D. Ala. 2003); *Clemmons*, *supra*, (Docs. 22, 25).  In others, it is not.  *See, e.g., Green v. Social Security Administration.*, 223 Fed. Appx. 915, 923 (11th Cir. 2007) (ALJ discounted a treating physician's opinion regarding claimant's functional abilities and limitations, but there otherwise remained substantial evidence to find the claimant not disabled); *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005) (lack of a treating physician's medical opinion did not invalidate the ALJ's RFC finding because there existed substantial evidence, outside the objective medical evidence, supporting such); *Dudley v. Astrue*, No. 3:06-CV-1286-VEH (N.D. Ala. Apr. 24, 2007) (similar ruling); *Cash v. Astrue*, No. 5:07-CV-0952-VEH (N.D. Ala. May 15, 2008) (similar ruling).  In sum, the outcome of these cases turns upon the sufficiency *vel non* of other evidence in the record that supports the ALJ's disability determination even in the absence of a MSS from the claimant's treating physician.

While the lack of a treating physician's MSS does not always invalidate an ALJ's RFC finding, the court concludes that the omission does so in the instant case. As in *Clemmons*, a case decided by this court, the lack of such an opinion, combined with a questionable negative credibility finding by the ALJ, is a cause for remand in the instant case. "Put differently, while an RFC is an administrative finding, the

administration must have substantial evidence to make such a finding." *Clemmons*, (Doc. 25 at 7) (memorandum opinion and order on reconsideration).

In *Clemmons*, a case analogous to the instant case, this court further supported its opinion with a decision from the Southern District of Alabama, which noted:

> [t]his court has held on a number of occasions that the Commissioner's fifth-step burden cannot be met by a lack of evidence, or by the residual functional capacity assessment of a non-treating, reviewing physician, but instead must be supported by the residual functional capacity assessment of a treating or examining physician.

*Clemmons*, (Doc. 25 at 10) (citing *Coleman*, 264 F. Supp. 2d at 1010).

Based upon the parties' briefs and the court's independent research, there does not appear to be an Eleventh Circuit case directly on point that applies to the circumstances of the instant case. Recognizing that while neither *Clemmons* nor *Coleman* is precisely akin to the instant case, the court is still guided by the general principles for which each opinion stands.

The government contends that the ALJ's RFC finding is based on substantial evidence because it is supported by not only Dr. Sparks's medical opinion that Malone is able to do sedentary work, but also the ALJ's negative credibility finding regarding Malone's subjective pain testimony. However, because both the ALJ's exclusive reliance upon Dr. Sparks's MSS and the ALJ's negative credibility finding

are questionable, the ALJ's RFC conclusion is not based on substantial evidence. A treating physician's MSS would provide the substantial evidence to either affirm the RFC determination or alter it. In the present case, the medical records provided by the treating physician confirm Malone's severe impairments, but they do not elaborate on her functional capabilities or limitations. "When the treating physician's medical opinions confirm the severe impairments yet are silent as to the all-important functional limitations" of Malone, ambiguity, causing unsubstantial evidence, arises. *Clemmons*, *supra*, (Doc. 22 at 12). Accordingly, the ALJ's decision that Malone is not disabled is alternatively not supported by substantial evidence due to the absence of a MSS from Malone's treating physician as to her functional abilities and the ALJ's questionable, if not improper, negative credibility finding.

**Conclusion**[9]

In social security disability cases, the district court must review the ALJ's opinion and "determine whether its conclusion, as a whole, is supported by substantial evidence in the record." *Foote*, 67 F.3d at 1558 (citing 42 U.S.C. § 405(g)). Based upon the court's evaluation of the evidence in the record and the submissions of the parties, the court finds that the Commissioner's final decision is

[9]Because the court reverses on pain standard and lack of treating physician's opinion issues, it does not address the other matters raised by Malone on appeal.

not supported by substantial evidence. Accordingly, the decision of the Commissioner is reversed and the case remanded. 42 U.S.C. § 405(g).[10]

On remand, the ALJ should fully develop the record by obtaining a MSS from Malone's treating physician. Additionally, the ALJ should accord substantial or considerable weight to the functional capacities opinion of the treating physician or, alternatively, show good cause to the contrary. Finally, based on a fully developed record, which includes a MSS from Malone's treating physician, the ALJ should re-evaluate Malone's credibility regarding her subjective complaints of pain and related limitations. An order in conformity with this memorandum opinion will be entered.

**DONE** and **ORDERED** this the 24th day of July, 2008.

**VIRGINIA EMERSON HOPKINS**
United States District Judge

[10]The fourth sentence of 42 U.S.C. § 405(g) states "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."